Judge Underwood
delivered his opinion as follows ;—
Hall, in virtue of a Kentucky, land office warrant, obtained a patent, in 1817, for 105 acres of land actually possessed by Pearl, and, in 1824, instituted this action of ejectment to recover the possession.
Pearl, to defend himself, gave in evidence an entry for 400 acres made, by virtue of a preemption warrant, in January, 1782, in the name of Benjamin Roberts, assignee of W illiam Hicks ; and likewise a survey for 300 acres made, by virtue of part of a Virginia treasury warrant, in November, 1797, for Tliomas Quirk, assignee &c. •"
It was admitted, that both the entry and sbrvey covered the land included by the patent to Rail. Upon this evident^ the court, in substance, instructed the jury, that if they believed the entry and survey covered the land in controversy, the patent to Hall passed no title, and they should find for the defendant.
The jury found for the defendant, and Hall pros ecutes a writ of error with supersedeas.
Whether the instruction given by the court is correct*, constitutes the only question.
■ The-act of 1815, II Dig. 806, intended to provide for the appropriation of waste and unappropriated lands. The tenth section qf the act, with a view to *574 quiet litigation, as is expressly declared, enumerate# certain descriptions of land winch shall not he appropriated under the provisions oí the act, and likewise specifies certain claims which shall be deemed suPer’or 1° surveys made upon warrants obtained by virtue of the act. If Pearl has shewn that the land in controversy fall within the description given by the statute, of land riot subject to be appropriated under its provisions, then there can fie no doubt-of the correctness of the instruction; for there could not be a more palpable contradiction than to assert that the land in controversy was such as ihe statute prohibited from appropriation,and that it had nevertheless been appropriated under the provisions of the statute. Moreover, it Pearl has shown a claim which the statute declares shall be deemed superior to Hall’s, tire instruction would be regarded as correct. For, by the act of 1815, the survey is made the commencement of title, and any claim which, in the language of the act, “ shall be deemed superior to surveys made upon warrants obtained by virtue of the-act,” must have the eflect of preventing the title from vesting in such land warrant claimant, otherwise it could not be “ deemed superior.” It will not do to say that the meaning of the act in such cases is, that the claims intended to be protected by the 10th section shall be deemed superior in equity but injerior in law. The language used authorizes n'o such construction. The policy of the legislature was to make them superior every where, so that the speculator might not be gratified by partial success, or thereby have it in his power to make beneficial compromises by operating on the fears of. his adversary. Whatever, tliereiore, may have been the old rule, or the current of decisions imparting an almost unimpeachable validity to patents emanating under former statutes, 1 cannot give to them, when founder on the act ot 1815, a character too sacred to be touched by the common law tribunals. I see no sufficient reason tor driving a party to the chancellor tor relief unuer this statute, when the mere identification of his claim, if it be such an one as is protected by the 10th section, would'entitle him to a decree. An inquiry into the nature of the claims *575 offered in evidence, by Pearl, will, under the foregoing principles,- determine the propriety of the instruction.
of^the acTof1 oi ls 15,which provide» for the appropriation of tho waste ami nnnpproprintorl lands of this Common wealth, dis-dossed.
*575 First, then, in relation to the entry in the name Of Roberts. It does not appear that this entry -was ever surveyed. By an act of the Virginia legislature, passed in 1785,1 Litt. Laws, 454, unless the owner of the entry in question attended with chain-men or marker, or appointed an agent, in case he lived out of the county, as required, his entry became void. There is no evidence shewing that the Owner of this entry ever complied with the law in this respect. Many acts of indulgence were passed both by Virginia and Kentucky. The last indulgence act passed by Kentucky, extending the time for surveying such entries, expired in 1798, so that it seems this entry was void long before the passage of the act of 1815 for appropriating waste lands, and that there was no act in force authorizing it to be surveyed, unless its owner labored under some saving disability which is not proved. Now, does the act of 1815 when, in the tenth section, it declares x‘ that all entries heretofore made, which by the laws of the time being were authorized to be made, shall be deemed superior to surveys made upon warrants obtained by virtue of this act,” intend thereby to give life and energy to a void entry? I think the act w'as not designed, nor can it have that effect.An entry which has become void is as though it never existed. The act of 1815 does not purport to repeal the laws under which Roberts’ entry became void, and to infuse into the entry new efficacy. So long as these law's remain unrepealed and in force,Roberts’ entry is a nullity, and was so before the passage of the act of 1815. That act by the expression ’■'■entries heretofore made” intended to include such entries as at the time of its passage continued to subsist and possessed validity as entries. Roberts’ entry, made in 1782, had ceased to be an entry, and, therefore, ■when the legislature are speaking of entries, it would ■be a strange construction to consider them as including nonentities. This void entry, in the name of Roberts, did not, therefore, in my opinion, justify the instruction.
*576 The survey in the name of Quirk is next to be considered. It has been the uniform doctrine of this court since the decision in the case of Patterson’s devisees vs. Bradford, Hardin, 104, that a survey, unless made in pursuance of the entry, is not an appropriation of the land. The survey, per se, confers no title. Surveys made under the act of 1815 constitute an exception to the rule. The 10th section of the act of 1815 protects titles founded on surveys made before the passage of the act, notwithstanding the entry on which the survey was founded may be vague, or notwithstanding a departure in the survey from the calls of a good entry. This may enable a younger grant, founded on such a survey, to overreach an elder grant founded on a Kentucky land office warrant, but it cannot, in opposition to the long settled doctrine, convert surveys into titles. Besides, no authority whatever for making the survey of Quirk has been shewn. This survey alone, then, without an entry or patent to support it, proved nothing in behalf of Pearl.
It cannot be said that the land in controversy could not be appropriated under the provisions of the act of 1815, on account of its being land forfeited to the Commonwealth. That an escheat of forfeiture of lands to the Commonwealth, for any cause, does not extinguish the title forfeited so as to render the land waste and unappropriated, and thereby to bring it into market under the general laws for appropriating vacant lands, is clearly settled by the cases of Elmendorf vs. Carmichael, III Litt. 481, and Stith &c. vs. Hart’s heirs, VI Monroe, 624. But Pearl has failed to bring his case within the influence of this principle, for he has not shewn that there ever was a title to the land in controversy in any one, anti that the title so existing had vested by escheat or forfeiture in the Commonwealth. A forfeiture of Quirk’s survey could not vest title in the Commonwealth, unless Quirk himself liad a title to the laud in dispute which he could part with by forfeiting ids survey. The land in contest does not, from any thing apparent in the record, seem to be of that description which could not he appropriated by the act of 1815, In every view, therefore, which *577 Í have been enabled to take of the case, I am of opinion, that the circuit court erred in the instruc tion given.
Green, for plaintiff; Owsley, for defendant.
The judgment of the circuit court is reversed, and the cause remanded for a new trial.
But as Judge Nicholas and myself do not agree in our reasoning, we cannot prescribe the principles which shall govern another trial. 1 can say for myself that the defendant may impeach the plaintiff’s patent, if he can make out a proper case. We unite in giving tire plaintiff in error a judgment for costs in this court.